```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-14-14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re LIGHTINTHEBOX HOLDING CO., LTD.
SECURITIES LITIGATION

-----------------------------------------------------------x

13 Civ. 6016 (PKC)

MEMORANDUM
AND ORDER

CASTEL, District Judge:

In a Memorandum and Order dated November 21, 2013 (the "Order"), the Court appointed Youhua Zheng as lead plaintiff in a consolidated class action lawsuit against LightInTheBox Holding Co., Ltd. ("LITB"). In re LightInTheBox Holding Co., Ltd. Sec. Litig., No. 13 Civ. 6016 (PKC), 2013 WL 6145114 (S.D.N.Y. Nov. 21, 2013).[1] Movant LightInTheBox Investor Group ("LITBIG") now moves for reconsideration of the Court's order, pursuant to Rule 60(b), Fed. R. Civ. P., and Local Civil Rule 6.3. For the reasons set forth below, movant's motion for reconsideration is denied.

LEGAL STANDARD

Motions for reconsideration are governed by Local Civil Rule 6.3 and Rule 60(b), Fed. R. Civ. P. A motion to reconsider is "addressed to the sound discretion of the district court[.]" See Mendell ex rel. Viacom, Inc. v. Gollust, 909 F.2d 724, 731 (2d Cir. 1990). Such motions are "generally not favored and [are] properly granted only upon a showing of exceptional circumstances." Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004) (citation omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be

---

[1] Familiarity with the facts set forth in the Order is assumed. All capitalized terms and abbreviations have the same meaning here as they had there.

expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided," Id. at 257.

Motions for reconsideration "should be granted only when the defendant identifies an intervening change of law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013) (citation and quotations omitted). As an initial matter, LITBIG has not identified any intervening change of controlling law. Nor has LITBIG relied on any new evidence. (Dkt. No. 40 at 2 ("[LITBIG] does not seek to introduce new materials on this motion . . . .") ) Thus, in order to prevail on their motion, LITBIG must show the need to correct clear error or prevent manifest injustice. See id.

ANALYSIS

A. Timing of the Court's Lead Plaintiff Order

The Court issued the Order on November 21, 2013. In a private securities class action, the PSLRA requires the filing plaintiff to publish notice in "a widely circulated national business-oriented publication or wire service" no later than 20 days after the date on which the complaint is filed. 15 U.S.C. § 78u-4(a)(3)(A)(i). The statute further provides, "Not later than 90 days after the date on which a notice is published . . . the court shall consider any motion made by a purported class member in response to the notice . . . and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ."

15 U.S.C. § 78u-4(a)(3)(B)(i). Notice of the instant action was published on August 27, 2013, the same day on which the complaint was filed. (Dkt. No. 13-1) The mandatory language of the PSLRA therefore required this Court to appoint a lead plaintiff in the action no later than November 25, 2013. Thus, even though the Court issued the Order before movants submitted reply briefs, the proximity of the reply deadline to the statutory deadline limited the Court's ability to consider such materials. Though reply briefs were not filed, LITBIG has indicated that its motion to reconsider incorporates arguments that it sought to raise in its reply brief. The Court has thus considered the substance of the replies on this motion.

### B. LITBIG Has Not Demonstrated Grounds for Reconsideration

In the Order, the Court declined to recognize LITBIG's claim for group status under the PSLRA. In its reconsideration motion, LITBIG raises two factual arguments that it claims bear on its suitability for group recognition. First, LITBIG argues that the dispute resolution procedure collectively adopted by its individual group members is based on net shares retained at the end of the class period, rather than gross shares purchased, and that this demonstrates group cohesion. Second, LITBIG asserts, for the first time, that its group members had a relationship predating their contact with its counsel, Cohen Milstein: specifically, they sought out common counsel in China, and this counsel directed them to Cohen Milstein. Neither of these two considerations alters the Court's analysis or conclusions.

With respect to the dispute resolution system, LITBIG asserts that the Court accepted an overly technical reading of the group's joint declaration explaining the voting

procedure and thus misunderstood the system. The relevant paragraph of that declaration provides:

> As to any issue that needs a decision or response from our group, we have no doubt that the members of our group will be able to reach consensus on the proper course of action. In the unlikely event that we cannot reach consensus, the issue will be decided by a majority vote, with each member having one vote per share purchased during the Class Period.

Dkt. No. 25-2, ¶ 12. LITBIG now argues that, in their declaration under penalty of perjury, its group members did not mean what they said. Although the phrase "one vote per share purchased during the Class Period" seems clear on its face, LITBIG now asserts that its group members meant "one vote per share retained at the end of the Class Period."

The Court accepts LITBIG's representation that its group members are prepared to submit a declaration attesting to this alternate procedure. Nonetheless, even accepting LITBIG's contentions would not change the result. First, although the Court took notice of the fact that the group voting procedure would assign control over the litigation in a manner at odds with the PSLRA's presumption, this consideration was not controlling. 2013 WL 6145114 at *2. Second, the voting procedure remains inconsistent with the PSLRA, which creates a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The statute no more provides that control over the litigation should be based on shares retained at the end of the class period than shares purchased during the class period.

With respect to the group's purported preexisting relationship, LITBIG claims that it is not a lawyer-driven group because the group was formed through a lawyer in China, who subsequently sent the group to its current counsel. Though current counsel may not have

originated the group, it was nevertheless a referral from one lawyer to another of an unaffiliated aggregate of persons who had contacted the lawyer. The core concerns animating the line of cases followed by this Court in the Order declining to recognize lawyer-driven groups for purposes of the PSLRA apply with equal force to these shareholders. See Order at *2 (collecting cases). The relevant inquiry is whether the purported "group" had a coherent relationship prior to pendency of the controversy giving rise to the instant litigation. See Order at *1 ("[T]here is no evidence of any relationship between the group members prior to the events at issue in this litigation.") Here, the sole connection among the shareholders is the pursuit of a money damage remedy against alleged wrongdoers and the happenstance that each contacted the same lawyer in China. "To allow lawyers to designate such unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation." In re Donnkenny Inc. Sec. Litig., 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997).

LITBIG has not contested the Court's finding that "there is no common connection between the individual group members other than their sharing claims held by all members of the putative class." Id. at *2. There has been no showing that these unrelated individual investors, with no connection to one another prior to the events at issue in this litigation, "will be able to function cohesively and to effectively manage the litigation apart from their lawyers . . . ." Id. at *3 (quoting Vargehese v. China Shenhuo Pharm. Holdings, Inc., 589 F.Supp 2d 388, 392 (S.D.N.Y. 2008). Because LITBIG has no "track record" of cooperation predating the instant controversy—indeed, no relationship whatsoever— there is no evidence beyond their own hopeful representations that they will be able to effectively cooperate and function as a coherent group. See In re Razorfish, Inc. Sec. Litig., 143 F. Supp.

2d 304, 309 (S.D.N.Y. 2001) ("Given, moreover, that the [movant group] has no independent existence and its composite members have no prior relationship, there is nothing to suggest that they will collectively ride herd on counsel anywhere as well as could a single sophisticated entity.").

CONCLUSION

The motion for reconsideration of the Court's order appointing lead plaintiff (Dkt. No. 39) is DENIED.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       January 13, 2014